OPINION
{¶ 1} The instant appeals stem from two final judgments of the Girard Municipal Court. Appellant, Michael L. Mogul, seeks the reversal of his conviction on two counts of failing to properly restrain or confine certain dogs under R.C. 955.22(C). As the primary basis for the appeals, he contends that he was denied his constitutional right to counsel when the trial court refused to appoint an attorney to represent him prior to his trial.
 {¶ 2} The charges against appellant were based upon two incidents in which residents of the neighborhood where he lives in Liberty Township, Ohio, made complaints about dogs which were running free in the vicinity of Ruth Circle and Haviland Drive. The first incident occurred on August 11, 2003, when an officer with the Liberty Township Police Department was dispatched to the area in response to a telephone complaint pertaining to three Irish setter dogs. After arriving in the area and speaking to a person who lived on Haviland Drive, the office drove his police cruiser to appellant's home on Ruth Circle, which is adjacent to Haviland Drive. As he neared the home, the officer saw the three dogs sitting in the road. Since the officer had previously been called to the area about the dogs, he immediately recognized them as belonging to appellant and his wife.
 {¶ 3} Upon parking his vehicle, the officer approached appellant's home and knocked on the front door. When appellant opened the door, one of the dogs who had been on the road went into the house, while the others remained on the porch. After explaining the nature of the call to appellant, the officer walked back to his cruiser and started to "write up" a citation on the matter. As he was again talking to appellant near his vehicle, the officer saw the dogs run through appellant's yard and then into a neighbor's yard. This incident ended when the officer gave the citation to appellant.
 {¶ 4} The second incident concerning the dogs took place at approximately 6:30 p.m. on September 21, 2003. Upon driving into the general area for the purpose of arresting appellant on a bench warrant, a different officer of the township police department saw him having a discussion with his neighbor while standing in his back yard. At that same time, the officer noticed that one of the Irish setters was lying in a vacant field located across the street from appellant's home.
 {¶ 5} After approaching appellant and informing him of the bench warrant, the officer inquired about the dog in the field. In response, appellant called the dog and took it into his house. As part of their ensuing conversation, appellant indicated that someone may have purposely released the dog from a "fenced-in" area located in his back yard. Once the officer had taken appellant to the police department, he served him with a new complaint for failing to properly confine or restrain the dog.
 {¶ 6} On September 23, 2003, appellant made his initial appearance on both charges before a municipal court magistrate. On that same date, appellant signed a written form which stated that, during his initial appearance, he had been informed in open court of his right to have an attorney appointed to represent him in the entire matter if he could not obtain counsel himself. Although this form had a segment where a defendant could waive his basic right to counsel, appellant did not sign that portion of the form.
 {¶ 7} Since other charges involving the Irish setters were pending against appellant's wife at that time, a consolidated bench trial was held on October 16, 2003. At the outset of the proceeding, appellant moved for a continuance of the matter so that the trial court could appoint counsel to represent his wife and himself. In support of this oral motion, appellant argued that he had never been given the opportunity to inform the court that he was indigent and needed counsel to assist him. He also argued that neither the trial judge nor the court magistrate had made an "individualized determination" concerning the possible need for counsel.
 {¶ 8} In regard to the "counsel" issue, the trial court generally noted that appellant and his wife had been informed of their constitutional rights during their initial appearance on the charges. In light of this, the trial court concluded that, since appellant had not taken any steps during the interim period to obtain counsel, he had implicitly waived his right to appointed counsel. Accordingly, the trial court denied the motion for a continuance.
 {¶ 9} During the ensuing trial, the state relied solely on the testimony of the two police officers who had been dispatched to appellant's home on the two dates. In attempting to defend himself on the two charges, appellant cross-examined the two officers and then testified in his own behalf. As part of this testimony, he tried to provide an explanation for the enmity between himself and his neighbors. Specifically, appellant indicated that there was an ongoing dispute concerning the ownership of certain land adjacent to the lot upon which his home is located. In addition, he stated that some of the lots around his home were owned by either himself or his son.
 {¶ 10} At the close of the evidence at trial, the trial court expressly found appellant guilty of both counts of failing to properly confine or restrain his dogs. In relation to the August 2003 charge, the trial court fined appellant the sum of $50. As to the September 2003 charge, the trial court further held that this particular offense constituted a fourth-degree misdemeanor in light of the fact that appellant had been convicted of two violations. As a result, the court sentenced him to thirty days in jail and fined him $250 on the second charge; however, the court then suspended the entire jail term and part of the fine, and placed him on probation for two years. Lastly, the trial court levied a separate $100 fine against appellant for acting in contempt of court during the trial.
 {¶ 11} Approximately two weeks after the trial, appellant filed a pro se motion for a new trial in behalf of himself and his wife. As the crux of this motion, appellant restated his arguments as to why the trial court had violated his constitutional right by imposing a jail term without appointing an attorney to represent him at trial. Appellant also challenged the court's decision to find him in contempt for trying to state his other legal arguments on the record in response to the court's various rulings during the trial. On November 4, 2003, the trial court released a separate judgment in which it overruled the motion for a new trial.
 {¶ 12} In now appealing both convictions to this court, appellant has raised the following assignments of error for our consideration:
 {¶ 13} "[1.] The trial court erred by requiring appellant to proceed at trial without counsel, despite his claims of indigency and that an individualized explanation of his right to counsel was never given, in violation of appellant's rights provided by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.
 {¶ 14} "[2.] The trial court erred and violated appellant's constitutional right of due process by not allowing appellant to present a defense of necessity.
 {¶ 15} "[3.] The appellant's convictions are against the manifest weight of the evidence."
 {¶ 16} Under his first assignment, appellant contends that the procedure followed by the trial court resulted in a violation of his constitutional right to appointed counsel. That is, he maintains that, since he never made a valid waiver of counsel, the trial court should not have allowed the trial to go forward without appointing an attorney to represent him. Appellant further maintains that the lack of an appointed attorney caused the ensuing trial to be chaotic and led to a violation of his general right to a fair trial.
 {¶ 17} Pursuant to the Sixth Amendment of the United States Constitution, the accused in a criminal proceeding is entitled "to have the Assistance of Counsel for his defence." In reviewing the various cases in which the United States Supreme Court has discussed the parameters of the Sixth Amendment, this court has noted that the right to appointed counsel is not applicable to every action which might be considered "criminal" in nature. Specifically, an indigent defendant is only entitled to an appointed attorney in any felony and misdemeanor prosecutions in which it is possible that a term of imprisonment could be imposed. State v. Boughner (Dec. 17, 1999), 11th Dist. No. 98-G-2161, 1999 Ohio App. LEXIS 6116, at *7-9, citingArgersinger v. Hamlin (1972), 407 U.S. 25 and Scott v.Illinois (1979), 440 U.S. 367. In paraphrasing the Supreme Court holdings, the Boughner court stated:
 {¶ 18} "In the wake of Scott, there can no longer be any doubt that the right to counsel does not extend to misdemeanorprosecutions in state courts which result in no jail time for thedefendant. Rather, the Constitution only mandates that an indigent criminal defendant may not be sentenced to a term of imprisonment unless the state has afforded him the right to assistance of appointed counsel." (Emphasis sic.) Id., at *10-11.
 {¶ 19} As part of this court's analysis in Boughner, we emphasized that the scope of the application of the right to counsel is recognized in Crim.R. 44, which sets forth the basic procedure for the assignment of counsel in Ohio criminal cases. Subsection (A) of the rule states that if a defendant has been charged with a "serious offense" and is unable to obtain his own counsel, an attorney must be "assigned" to him so that he will be able to have legal representation at every stage of the case. The only exception noted under subsection (A) is when "the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel." In contrast to the mandatory requirement of subsection (A), Crim.R. 44(B) provides:
 {¶ 20} "Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel."
 {¶ 21} Under Crim.R. 2(D), a petty offense is defined as any misdemeanor for which the maximum penalty under state law is imprisonment for six months or less. In the instant case, appellant was cited for two violations of R.C. 955.22(C). R.C.955.99(E)(1) states that a person who is found guilty under R.C.955.22(C) can be sentenced to a jail term of thirty days or less if he has had a prior conviction under that provision. Thus, since the maximum period of imprisonment for failing to properly confine or restrain a dog is thirty days, a violation of R.C.955.22(C) is considered a "petty offense" for purposes of Crim.R. 44.
 {¶ 22} In turn, because the underlying offense in this matter was a "petty" misdemeanor, Crim.R. 44(B) was applicable. Pursuant to that rule, the trial court could impose a term of imprisonment only under two circumstances: (1) appellant was actually represented by counsel during his trial; or (2) he decided to represent himself and properly waived his right to counsel. Our review of the trial transcript in this case readily indicates that appellant did not have the benefit of counsel at trial. As to this point, we would again note that appellant requested at the outset of the trial that his cases be continued so that the trial court could appoint an attorney to represent him. Thus, the imposition of a jail term upon appellant was appropriate in this instance only if he properly waived the right to counsel.[1]
 {¶ 23} The basic procedure for the waiver of counsel in a criminal action is delineated in Crim.R. 44(C), which simply states that such a waiver must be made in open court and must be recorded in the manner provided under Crim.R. 22. The latter rule then states that the waiver of counsel in "petty cases" should be recorded by means of shorthand, stenotype, or any other adequate mechanical device.
 {¶ 24} In construing Crim.R. 44(C), this court has indicated that the requirements of the rule must be applied consistent with the general principle that courts must indulge every reasonable presumption against the waiver of a fundamental constitutional right. State v. Bayer (1995), 102 Ohio App.3d 172, 179. Hence, all waiver requirements in Crim.R. 44 and Crim.R. 22 are mandatory. Id. For this reason, a waiver of the right to counsel cannot be presumed from a silent record; instead, any such waiver must affirmatively be set forth on the record. State v. Dyer
(1996), 117 Ohio App.3d 92, 95. Furthermore, it has been emphasized that the state ultimately has the duty to demonstrate that a valid waiver took place. Id.
 {¶ 25} As to the actual substance of the waiver, the courts of this state have held that a proper waiver can occur only when a trial court has given the defendant a sense of the inherent difficulties in attempting to represent himself throughout a criminal case. State v. Vordenberge (2002),148 Ohio App.3d 488, 492. Consequently, a trial court is obligated to engage in a dialog with the defendant which will inform him of the nature of the charged offenses, any "included" offenses, the range of possible punishments, any possible defenses, and any other facts which are essential for a total understanding of the situation.Dayton v. Ealy, 2d Dist. No. 20462, 2006-Ohio-308.
 {¶ 26} In the present case, a review of the trial transcript establishes that the trial court never tried to have the necessary dialog with appellant during the proceeding. More importantly, the transcript shows that appellant did not seek to waive his right to have an attorney appointed for him; in fact, as was noted above, he expressly asked for the appointment of counsel. In addition, this court would note that, although the trial court stated at trial that the right to appointed counsel had been explained to appellant during his initial appearance, the record before us in these appeals does not have a transcript of that hearing. Thus, even if a valid waiver did occur at that time, we cannot consider that possibility for purposes of our discussion because the normal presumption of regularity cannot be applied in relation to a waiver of counsel. As to this latter point, this court would again indicate that even though the state is the appellee in this instance, it still would have the burden of ensuring that the record on appeal contained a transcript of the initial appearance if one was available.
 {¶ 27} As one reason for its decision to deny the request for counsel, the trial court held that appellant had implicitly waived his right to counsel by attending the trial without taking any steps to obtain an attorney. However, in light of the requirements of Crim.R. 44(C) and the relevant case law, a waiver by implication is simply not permissible. See In re Bays, 2d Dist. Nos. 2002-CA-52 and 56, 2003-Ohio-1256. Again, any waiver of the constitutional right to counsel must be made affirmatively and on the record.
 {¶ 28} In light of the foregoing analysis, this court holds that the record does not support the conclusion that appellant waived his right to appointed counsel in a knowing, intelligent, and voluntary manner. As a result, the trial court did not have the authority to impose a jail sentence after finding appellant guilty of failing to constrain or confine his dogs.
 {¶ 29} As part of this first assignment, appellant further contends that the failure of the trial court to obtain a valid waiver necessitates the vacation of his entire conviction. As to this issue, we would again state that, due to the frequency with which the basic "waiver" question has been raised before us, we have had a prior opportunity to address this specific issue in the context of a "petty offense" conviction. In Boughner,
supra, this court reached the following conclusion after reviewing Crim.R. 44(B) and the relevant precedent of the United States Supreme Court:
 {¶ 30} "Thus, the right to appointed counsel under the Sixth
and Fourteenth Amendments in state criminal proceedings is limited to cases that lead to actual imprisonment. Consequently,by vacating any term of confinement imposed on an unrepresentedmisdemeanant, any potential violation of the constitutional rightto counsel is thereby eradicated. In other words, if the jail time is thrown out on appeal, then there is no cognizable violation of the Sixth Amendment right to counsel because, as the Supreme Court of Ohio has held, `uncounseled misdemeanor convictions are constitutionally valid if the offender is not actually incarcerated.' [State v. Brandon (1989),45 Ohio St.3d 85,] at 86." (Emphasis sic.) Boughner at *25-26.
 {¶ 31} Pursuant to the foregoing analysis, the constitutional "right" to appointed counsel is applicable to a "petty offense" prosecution only to the extent that the defendant can be imprisoned upon conviction. Accordingly, the trial court's error in the instant actions does not warrant the reversal of appellant's entire conviction on both charges. Instead, he is only entitled to have his thirty-day jail term vacated.
 {¶ 32} Finally, as to appellant's assertion that he was denied a fair trial as a result of the trial court's decision to deny his request for counsel, this court would again emphasize that, pursuant to the relevant case law, a defendant charged with a petty misdemeanor offense is not "entitled" to the appointment of counsel even if he is indigent. Furthermore, our review of the trial transcript does not support appellant's contention that the trial was "chaotic." To the extent that there was any confusion during the trial, it was caused by appellant's attempts to continue to state his arguments either: (1) after the trial court had made its ruling; or (2) while the court was addressing appellant's wife. For example, appellant continued to try to present evidence concerning the nature of his underlying disagreement with his neighbors even after the trial court had ruled such evidence irrelevant. In light of this, it cannot be said that the proceeding was any more chaotic than a typical municipal court trial in which multiple pro se litigants are attempting to represent themselves.
 {¶ 33} Because the trial court erred in imposing a jail term without obtaining a waiver of appellant's right to counsel, his first assignment of error is well taken in part.
 {¶ 34} Under his next assignment, appellant asserts that the trial court erred in refusing to permit the submission of certain evidence pertaining to an ongoing property dispute. According to appellant, the trial court's ruling deprived him of the ability to present the affirmative defense of necessity. Based on this, he further asserts that he was denied his constitutional right to due process.
 {¶ 35} Appellant's entire argument is predicated upon an evidential ruling the trial court made during his cross-examination of the police officer who issued the citation covering the August 2003 charge. As part of his questioning, appellant attempted to introduce an alleged aerial photograph of the area where he lived. In responding to the objection of the state to the photograph, appellant had the following exchange with the trial judge:
 {¶ 36} "Mr. Mogul: We have a defense of necessity. I attempted to contact the prosecutor who remains incommunicado. Prosecutor Gilmartin conferred. I showed the damaged car. I told him I think that the whole thing is nothing more than an attempt to take property and I'd like to have it resolved. I realize the Court doesn't have jurisdiction —
 {¶ 37} "[The Court]: That property issue isn't relevant to these proceedings.
 {¶ 38} "Mr. Mogul: That's correct.
 {¶ 39} "[The Court]: No further testimony, no further documentation, nothing further shall be pursued on the issue of any property dispute from this moment hence.
 {¶ 40} "Mr. Mogul: Nothing?
 {¶ 41} "[The Court]: That is the ruling, nothing."
 {¶ 42} Appellant's reference to "an attempt to take property" related back to a point he had made during his opening statement. At that time, appellant had stated that some of the problems with his neighbors stemmed from the fact that one neighbor was trying to take a parcel of appellant's land through adverse possession. He had further stated that the property dispute had resulted in vandalism to his wife's car.
 {¶ 43} Under the common law of this state, the defense of necessity can be established under circumstances in which the commission of the criminal act will avoid greater harm than the harm which the criminal statute is designed to stop. State v.Crosby, 6th Dist. No. L-03-1158, 2004-Ohio-4674, at ¶ 30. The defense can also be invoked in situations in which an act is socially acceptable despite the fact that it is also technically criminal. State v. Prince (1991), 71 Ohio App.3d 694, 699. In applying the foregoing definitions, Ohio courts have held that the following elements must be met in order to demonstrate the basic defense:
 {¶ 44} "* * * (1) the harm must be committed under the pressure of physical or natural force, rather than human force; (2) the harm sought to be avoided is greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believes at the moment that his act is necessary and is designed to avoid the greater harm; (4) the actor must be without fault in bringing about the situation; and (5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm." Id.
 {¶ 45} Although appellant's brief before us does not contain an explanation as to why he believed the defense was applicable in this instance, it would appear that he felt that, by allowing the dogs to run free over the disputed tract of land, he could defeat the adverse possession claim of the neighbor. Without commenting upon whether this act would be effective against such a claim, this court would merely indicate that appellant had other acceptable means to protect his interest in the disputed land. For example, appellant or his representative could have filed an action to quiet title in the land. The filing of such an action clearly would be more effective and peaceful than allowing the dogs to roam on the land without any restraints.
 {¶ 46} In light of the foregoing, appellant never would have been able to satisfy the fifth element for the defense of necessity; i.e., there existed an alternative means for him to avoid the loss of the land. Thus, the trial court did not err in ruling that any evidence as to the "land" dispute was irrelevant in this instance.
 {¶ 47} Even though appellant did not refer to this point in his brief, our review of the trial transcript shows that, during his opening statement, he asserted that one neighbor had tried to lure the dogs away from their home by teasing them. As to this point, we would note that no evidence was ever presented tying the act of the neighbor to the incidents underlying the instant offenses. Therefore, appellant failed to submit any evidence that would have supported the defense of necessity.
 {¶ 48} Since the trial court's evidential rulings did not improperly deprive appellant of the ability to establish a valid defense, his second assignment lacks merit.
 {¶ 49} Under his final assignment, appellant argues that the trial court's guilty verdicts on the two charges were against the manifest weight of the evidence. Essentially, he maintains that the evidence he presented as part of his defense was sufficient to raise a reasonable doubt as to whether the dogs were not on his property at the time they were seen by the police officers.
 {¶ 50} As was noted above, both charges against appellant were based upon alleged violations of R.C. 955.22(C). This statute provides:
 {¶ 51} "No owner, keeper, or harborer of any dog shall fail at any time to keep it either physically confined or restrained upon the premises of the owner, keeper, or harborer by a leash, tether, adequate fence, supervision, or secure enclosure to prevent escape, or under reasonable control of some person, except when the dog is lawfully engaged in hunting accompanied by the owner, keeper, or harborer or a handler."
 {¶ 52} In challenging the state's evidence regarding the "upon the premises" element, appellant stated at trial that, in addition to the lot upon which his residence was located, he owned four other lots in his neighborhood. Based upon this, he now contends that, even though the dogs were not on his "home" lot when they were seen by the police officers, they were still on land which belonged to him. Appellant further asserts that his testimony concerning the other four lots was never rebutted by the state.
 {¶ 53} In relation to the August 2003 charge, a review of the instant transcript readily shows that the police officer who issued the citation testified that this charge was predicated upon the fact that he had seen the three dogs standing in the roadway as he approached appellant's residence. Thus, appellant's statement as to his ownership of the other four lots was simply not relevant to the factual basis of this charge. That is, regardless of the ownership of the other lots, the fact that the dogs were in the roadway was sufficient to show that they were not on appellant's "premises" for purposes of R.C. 955.22(C).
 {¶ 54} As to the September 2003 charge, the second police officer testified that he saw one dog lying in a field which was located across the street from appellant's home and near a neighbor's home. In attempting to testify as to the other four lots, appellant never stated that the field which was referenced by the second officer was located in one of his lots. In regard to this point, this court would emphasize that the testimony of appellant was extremely convoluted and difficult to follow. As a result, the trial court could have easily concluded that appellant had failed to establish his ownership of the specific place where the dog had been seen.
 {¶ 55} Furthermore, as part of her closing argument, appellant's wife stated that her husband would become the owner of the four lots when certain litigation was concluded. When the trial court then asked if they had any documents to verify this statement, she indicated that they did not. Therefore, even if the exact location of the lots had been demonstrated, appellant's actual ownership of the land was still in dispute.
 {¶ 56} In considering whether a criminal conviction is against the manifest weight of the evidence, an appellate court must determine if the trier of facts, in resolving any conflicts in the evidence, clearly lost its way and, thereby, created a miscarriage of justice. Conneaut v. Peaspanen, 11th Dist. No. 2004-A-0053, 2005-Ohio-4658, at ¶ 11. In making this determination, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of the various witnesses. Id. Moreover, in applying the foregoing standard, an appellate court must be guided by the general principle that a conviction should only be reversed on the basis of "manifest weight" when the evidence "weighs heavily" against the finding of the jury or trial court.State v. Iser, 11th Dist. No. 2004-T-0039, 2005-Ohio-5602, at ¶ 46, quoting State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 57} Upon reviewing the entire record before us in these appeals, this court cannot say that the trial court "lost its way" in finding appellant guilty of both charges under R.C.955.22(C). The testimony of both officers readily established that the Irish setter dogs had not been confined or restrained within the boundaries of the basic "premises" where they were harbored. In trying to rebut the officers, appellant was unable to show that he was the owner of the separate locations where the dogs were found. Accordingly, since appellant's two convictions for failing to properly confine or restrain the dogs were not against the manifest weight of the evidence, his third assignment of error is also without merit.
 {¶ 58} Pursuant to foregoing analysis, appellant's first assignment of error has merit in part. Therefore, while appellant's basic convictions for failing to confine or restrain his dogs are upheld, this court hereby modifies his sentence by vacating the thirty-day jail term imposed by the trial court. To this extent alone, the judgment of the trial court is modified and affirmed as modified.
O'Neill, J., Rice, J., concur.
[1] In the trial transcript, a reference was made to the fact that appellant may have been a licensed attorney. For purposes of our analysis under the first assignment, this court would indicate that this fact would have no effect upon appellant's right to appointed counsel. See U.S. v. Mosely (C.A. 6, 1987),810 F.2d 93, in which counsel was appointed for an Ohio municipal judge who was indigent at the time of the criminal trial. Accordingly, a proper waiver of the right to counsel was still necessary in this instance before the trial court could "allow" appellant to represent himself at trial.