[Cite as *State v. Barnes*, 2013-Ohio-2836.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-P-0133** |
| JACK E. BARNES, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas.
Case No. 2012 CR 0021.

Judgment: Affirmed in part; reversed in part and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Kristina Drnjevich*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Brian A. Smith*, 503 West Park Avenue, Barberton, OH 44203 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Jack E. Barnes, Jr., appeals the judgment of conviction entered by the Portage County Court of Common Pleas, after trial by jury, on one count of vandalism and one count of resisting arrest. As the record establishes a sufficient evidentiary basis by which a jury could conclude the act of vandalism was committed out of necessity, and as appellant's trial counsel failed to request an instruction on the defense of necessity, we conclude trial counsel's representation in defending against

the vandalism charge fell below an objective standard of reasonable representation and prejudiced Mr. Barnes. Mr. Barnes' conviction for vandalism is therefore reversed and the matter remanded for a new trial. Mr. Barnes' remaining conviction for resisting arrest is affirmed.

{¶2} Mr. Barnes was indicted on one count of vandalism, a fifth-degree felony in violation of R.C. 2909.05(B)(1)(b), and one count of resisting arrest, a second-degree misdemeanor in violation of R.C. 2921.33(A). The matter proceeded to a jury trial where the following facts were adduced through testimony and exhibits.

{¶3} On the warm, sunny evening of September 14, 2011, at approximately 6:30 p.m., Officer Scott Hearns of the Windham Police Department responded to a domestic disturbance call at a private residence in the village of Windham. Upon arrival, Officer Hearns observed Mr. Barnes and Ms. Maria Disanza outside the home along with two other residents. Officer Hearns approached Ms. Disanza to obtain a narrative of events that prompted the disturbance call.

{¶4} As Officer Hearns began questioning Ms. Disanza, Mr. Barnes, appearing both agitated and inebriated, injected himself into the investigation in an effort to argue his version of events. After Officer Hearns unsuccessfully advised Mr. Barnes to calm himself, the officer attempted to place Mr. Barnes in handcuffs. When Mr. Barnes became resistant, Officer Hearns forced him to the ground. Mr. Barnes, whose face was planted in dog excrement, continued to frustrate the officer's efforts to place him in handcuffs. Officer Hearns sprayed the side of Mr. Barnes' face with pepper spray and finally successfully placed him in handcuffs. Mr. Barnes explained at the scene that he would not enter the cruiser until Officer Hearns "got this shit" off his face, referring

2

literally to the dog excrement. Mr. Barnes was placed into the cruiser with the excrement and pepper spray still on his face. Officer Hearns explained to Ms. Disanza that Mr. Barnes was under arrest for disturbing the peace.

{¶5} Officer Hearns returned to the station, backed the cruiser into the garage and shut the garage door. The officer turned off his cruiser and went into the dispatch area to work on his arrest report. Rather than place Mr. Barnes in the booking room, Officer Hearns left Mr. Barnes in the back of his cruiser. The rear windows were shut, though Officer Hearns left the driver and passenger side windows "slightly cracked" and had the small plexi-glass partition door open.

{¶6} At approximately 7:00 p.m., Officer Jason Lamtman arrived on duty and, according to his testimony, observed Mr. Barnes for a short period. Testimony differs at this point: Mr. Barnes explained the pepper spray in conjunction with the extremely warm cabin was burning his face. He testified sweat was pouring down his face and he began to hyperventilate. He explained he yelled out that he could not breathe, but no one came. Officer Lamtman and Officer Hearns acknowledged Mr. Barnes was yelling, but did not remember him specifically stating he could not breathe.

{¶7} Officer Lamtman then left the garage to take a call at a nearby Circle K convenience store, leaving Mr. Barnes in the back of the cruiser completely unattended. After 45 minutes of being in the garage, Mr. Barnes explained he felt asphyxiated and had no choice but to break the cruiser window. Officer Hearns conceded Mr. Barnes had been in the back of the cruiser in the garage for 45 minutes.

{¶8} Mr. Barnes broke the cruiser window with his foot, cutting his leg in the process. Photographs admitted into evidence illustrate a large amount of dried blood on

the rear vinyl seat of the cruiser. Mr. Barnes was treated for minor injuries and released into custody.

{¶9} Despite trial counsel eliciting the testimony and arguing that Mr. Barnes had no choice but to kick out the window in order to breathe, he did not assert the defense of necessity and did not request any such jury instruction.

{¶10} The jury returned a verdict of guilty on both charges, and Mr. Barnes was sentenced to two years probation.

{¶11} Mr. Barnes now appeals and asserts four assignments of error, which will be addressed out of numerical order. Appellant's second assignment of error states:

{¶12} "Trial counsel's failure to define and explain the defense of necessity during the trial, or to request a jury instruction regarding the defense of necessity constituted ineffective assistance of counsel."

{¶13} In order to prevail on an ineffective assistance of counsel claim, appellant must demonstrate that trial counsel's performance fell below an objective standard of reasonable representation, and there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus, adopting the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). There is, however, a general presumption that trial counsel's conduct is within the broad range of professional assistance. *Bradley* at 142-143.

{¶14} We begin by examining the charge of vandalism. First, it must be determined whether trial counsel's performance fell below an objective standard of reasonable representation. Strategic and tactical decisions of trial counsel fall within the

4

scope of objectionably reasonable judgment, and *generally*, "[a]n attorney's decision not to request a particular jury instruction is a matter of trial strategy and does not establish ineffective assistance of counsel." *State v. Morris*, 9th Dist. No. 22089, 2005-Ohio-1136, ¶100.

{¶15} As *State v. Vandergriff*, 11th Dist. No. 99-A-0075, 2001 Ohio App. LEXIS 4285 (Sept. 21, 2001) illustrates, however, when evidence is adduced to meet the burden of production of an affirmative defense, it is difficult to characterize trial counsel's failure to formally assert the defense and request a corresponding instruction as trial strategy. There, the defendant was tried before a jury on one count of domestic violence following a physical altercation with his 12-year-old child. During trial, counsel developed testimony which provided a sufficient evidentiary basis by which to conclude the defendant exercised reasonable parental discipline—an affirmative defense. Despite this testimony and counsel's argument, counsel failed to assert the defense of reasonable parental discipline and failed to request the corresponding instruction.

{¶16} On appeal, we concluded trial counsel's representation fell below an objective standard and that his failure to request the instruction was *not* trial strategy: counsel clearly attempted to raise the defense, devoting much of his cross-examination of the victim and the victim's mother to eliciting evidence of the victim's poor behavior and physically-combative actions on the day in question. *Id.* at *16-17. Though the defendant did not take the stand, the burden of production was met by the testimony adduced through cross-examination. *Id.* at *17. We concluded: "It is apparent that counsel did not make a strategic decision not to raise the defense, rather, he did present the defense, although without testimony from appellant." *Id.* Further, "[u]nder

5

the facts of this case, asserting the defense of proper and reasonable parental discipline was the only rational avenue for the defense to take. An essential part of raising the defense is getting a jury instruction that permits a finding it has been met." *Id.*

{¶17} Similarly here, counsel clearly *attempted* to raise the defense, devoting much of his cross-examination of Officer Hearns to his leaving Mr. Barnes unattended in the back seat of the parked cruiser with "slightly cracked" front windows in an enclosed garage on a warm summer evening for approximately 45 minutes. Counsel also elicited testimony regarding the severe effects of pepper spray, including the sensation of burning, and further highlighted the fact that Officer Hearns did not wipe off the spray and did not place Mr. Barnes in the booking area.

{¶18} Counsel also presented a case and placed Mr. Barnes on the stand. Mr. Barnes described the conditions inside the cruiser, noting the air was off, the windows were up, the pepper spray was burning his face, and "it was definitely more than seventy degrees" in the confined cabin. He testified that he felt completely unattended and did not see another officer in the garage watching him. He noted he did not know where Officer Hearns had gone or when he would return. Mr. Barnes explained he began hyperventilating and felt asphyxiated from the lack of air flow and from the burning on his face. He testified he was screaming, yelling, and pleading for help: "I begged them to let me out of there, to let them know that I couldn't breathe. I banged on the window with my head a few times. Nobody would come out. I felt like, you know, I needed to get out of that car." The prosecution responded to this testimony, arguing that if someone is yelling, he can breathe.

6

**{¶19}** When asked why he did not wipe off his own face, Mr. Barnes explained he was unable to do so given that his hands were wrapped around his back and the quarters were too tight to maneuver his knees up to his face. Mr. Barnes testified, consistent with Officer Hearns, that he was in the back seat of the cruiser in the garage for approximately 45 minutes. The defense, boiled down to its essence, can succinctly be recited with this exchange:

**{¶20}** "Q: So why did you break the window?

**{¶21}** "A: Because I couldn't breathe."

**{¶22}** Given the testimony through cross and direct examinations, Mr. Barnes met the burden of production by establishing a sufficient evidentiary basis necessary to warrant an instruction on the affirmative defense of necessity.

**{¶23}** During closing argument, trial counsel asserted:

**{¶24}** [W]hen you're in a situation, you're locked in a car for 45 minutes with slit windows and nothing more than one by one foot square to breathe through, and you have pepper spray on your head and you're sweating * * * [w]hen you're in that situation, and you can't open up the door, and you can't hit an emergency switch and nobody is coming, when you're yelling and screaming, you get to kick the door out. That's not vandalism.

**{¶25}** Thus, trial counsel elicited the testimony that Mr. Barnes broke the window because he had no choice and, at the close of evidence, argued that when one is in that situation, they get to kick the door out. Despite this, counsel did not assert the defense of necessity and did not request the corresponding jury instruction with respect to that

7

defense. Given that these actions are inconsistent and that the only rational avenue to proceed was under the defense of necessity, we cannot conclude this failure constituted trial strategy. Rather, in failing to assert the defense of necessity and to request a corresponding jury instruction after arguing that all the necessary points were raised by cross examination and the defense case, counsel's representation fell below an objective standard of reasonable representation as applied to the charge of vandalism.

{¶26} We must now determine whether there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different; i.e., had counsel properly asserted the defense and requested an instruction, there is a reasonable probability that Mr. Barnes would not have been convicted of vandalism. As cautioned by the Ohio Supreme Court, the defense of necessity "is strictly and extremely limited in application and will probably be effective in very rare occasions." *State v. Cross*, 58 Ohio St.2d 482, 488 (1979). To prove the defense of necessity, the following elements must each be met:

{¶27} '(1) the harm must be committed under pressure of physical or natural force, rather than human force; (2) the harm sought to be avoided is greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believes at that moment that his act is necessary and is designed to avoid the greater harm; (4) the actor must be without fault in bringing about the situation; and (5) the harm threatened must be imminent, leaving no alternative by which to avoid the greater harm.' *State v. Mogul*, 11th Dist. Nos. 2003-T-0177 &

8

2003-T-0174, 2006-Ohio-1878, ¶44, quoting *State v. Prince*, 71 Ohio App.3d 694, 699 (4th Dist.1991).

**{¶28}** As indicated above, there is sufficient evidence with regard to each element whereby, if requested, the instruction should be given. If believed, it would not be considered unreasonable for a jury to acquit Mr. Barnes of the charge. The alleged harm was committed by the natural combination of high temperature, pepper spray, and sweat; Mr. Barnes risked criminal prosecution and endured injury to his leg in order to break the window; Mr. Barnes may have reasonably believed the act was necessary to avoid hyperventilation, especially when his cries for help went unanswered and he felt essentially abandoned; while the conduct of Mr. Barnes put him in the position to be arrested, he was without fault with regard to the circumstances he found himself in at the police station—Officer Hearns deliberately left him handcuffed in the cruiser without allowing him to wipe off the dog excrement or the pepper spray for an inordinately long period of time; finally, the harm he claimed to be experiencing was serious—the feeling of imminent asphyxiation.

**{¶29}** As noted by the Ohio Supreme Court, "'[i]n a humane society, some attention must be given to the individual dilemma.'" *Cross* at 488, quoting *People v. Lovercamp*, 43 Cal. App. 3d 823 (1974). With this evidence and the proper instruction, a jury could reasonably conclude Mr. Barnes had no choice but to break the window. We therefore conclude counsel's failure to request the instruction prejudiced Mr. Barnes.

**{¶30}** The problem with counsel arguing the defense during the course of the trial but failing to request the instruction is obvious. It is clear Mr. Barnes knowingly and

9

deliberately caused the damage. Without the instruction on the defense of necessity, there is nothing in the jury instructions as given that could have permitted the jury to find Mr. Barnes not guilty.

{¶31} Given the facts and circumstances outlined above, Mr. Barnes was denied effective assistance of trial counsel with regard to the charge of vandalism.

{¶32} Mr. Barnes suggests both of his convictions must be reversed; however, turning to the remaining charge of resisting arrest, it cannot be concluded that there was sufficient evidence to warrant an instruction for the defense of necessity even if requested. Rather, trial counsel's failure to request the instruction only had an impact on the charge of vandalism.

{¶33} Accordingly, Mr. Barnes' second assignment of error has merit to the extent indicated.

{¶34} Mr. Barnes' third assignment of error states:

{¶35} "The trial court's decision not to give a jury instruction on the defense of necessity to the charge of vandalism constituted plain error."

{¶36} We cannot find plain error on the part of the trial court in this regard; in any event, the disposition of Mr. Barnes' second assignment of error renders the above-framed assignment moot.

{¶37} Mr. Barnes' fourth assignment of error states:

{¶38} "The trial court's overruling of trial counsel's objection to introduction of the video recording constituted an abuse of discretion."

{¶39} In his fourth assignment of error, Mr. Barnes takes exception to a videotape shown to the jury, arguing its danger of unfair prejudice outweighed its

probative value under Evid.R. 403(A). Officer Hearns' lapel was fitted with a small recording device that documented the arrest of Mr. Barnes. It shows Mr. Barnes struggling to be fitted with the handcuffs and seemingly resistant to the officer's efforts.

{¶40} Ordinarily, a trial court's evidentiary rulings are reviewed under an abuse of discretion standard. However, a review of the record in this case indicates trial counsel did not object to the admissibility of the tape and, in fact, stipulated to its authenticity. Trial counsel eventually made an objection at one point, simply stating, "I object *to the rest of this* as irrelevant." It could be assumed this objection was lodged at the point in the videotape after Mr. Barnes was placed into the cruiser and Officer Hearns obtained the social security number of Ms. Disanza who, in turn, chastised the officer for his treatment of Mr. Barnes. However, it is not clear at what point the objection was made, and in relation to admissibility of the tape in its entirety, Mr. Barnes has waived all but plain error on appeal, which has not been demonstrated.

{¶41} Indeed, notice of plain error is to be "taken with utmost caution and only to prevent a manifest miscarriage of justice[.]" *State v. Reives-Bey*, 9th Dist. No. 25138, 2011-Ohio-1778, ¶11. Moreover, this court proceeds with great reluctance in employing a plain error analysis in cases that would require the trial court to advocate on behalf of the defendant. *See, e.g., State v. Mock*, 11th Dist. No. 2012-L-066, 2013-Ohio-874, ¶10. For instance, to avoid the alleged error in this case, the trial court would have had to object to the videotape's admissibility on behalf of the defendant.

{¶42} Mr. Barnes' fourth assignment of error is without merit.

{¶43} Mr. Barnes' first assignment of error states:

11

**{¶44}** "Appellant's convictions for vandalism and resisting arrest were against the manifest weight of the evidence."

**{¶45}** The disposition of Mr. Barnes' second assignment of error renders the vandalism portion of the above-framed assignment moot. The remaining question is solely whether the conviction of resisting arrest was against the manifest weight of the evidence.

**{¶46}** To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In weighing the evidence submitted at a criminal trial, an appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Further, "[n]o conviction resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the appeal." *Webber v. Kelly*, 120 Ohio St.3d 440, 2008-Ohio-6695, ¶6.

**{¶47}** Here, the defense maintained Mr. Barnes did not know at the time that he was under arrest and therefore could not resist arrest. "An arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *State v. Darrah*,

12

64 Ohio St.2d 22, 26 (1980); *State v. Barker*, 53 Ohio St.2d 135 (1978), paragraph one of the syllabus. "Furthermore, an arrest, in the technical, as well as the common sense, signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime." *Id.* A review of the record indicates the jury was instructed accordingly.

**{¶48}** As explained above, Officer Hearns' lapel was fitted with a small recording device, which documented the difficulty he encountered in fitting Mr. Barnes with handcuffs and Mr. Barnes' downright refusal to enter the back of the cruiser. There was a considerable scuffle between Officer Hearns and Mr. Barnes in the officer's attempt to detain Mr. Barnes. Ultimately, Mr. Barnes was brought to the ground, sprayed with pepper spray, and forcibly placed into handcuffs—completely restraining his freedom of movement.

**{¶49}** Any doubt as to whether Mr. Barnes understood he was under arrest dissipates when Officer Hearns ordered Mr. Barnes in the car, explaining, "you are under arrest; you have to get in the car one way or another," while threatening to stun him into submission via taser. Even after this point, Mr. Barnes did not enter the cruiser, explaining, "you have to clean this shit off of me." Rather, Mr. Barnes stood in the doorway of the cruiser while being ordered numerous times to enter. Thus, considering the weight of the evidence and all reasonable inferences, it cannot be determined the jury lost its way and created a manifest miscarriage of justice in its conviction. The jury had before it the videotape and the testimony of Officer Hearns and Mr. Barnes; we must defer to the weight and credibility the jury gave to the evidence in this case.

{¶50} Mr. Barnes' first assignment of error is without merit.

{¶51} Mr. Barnes' conviction for vandalism is reversed. Mr. Barnes' conviction for resisting arrest is affirmed. The judgment of the Portage County Court of Common Pleas is affirmed in part and reversed in part, and the case is remanded for a new trial on the charge of vandalism.

DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.