[Cite as *State v. Tackett*, 2013-Ohio-4098.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-L-130** |
| JEREMY P. TACKETT, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas.
Case No. 12 CR 000311.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Karen A. Sheppert*, Assistant Prosecutor, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*R. Paul LaPlante*, Lake County Public Defender, and *Vanessa R. Clapp*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).


TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Jeremy P. Tackett, appeals the judgment of conviction entered by the Lake County Court of Common Pleas, following a jury trial, on one count of aggravated robbery, one count of kidnapping, and one count of theft of drugs, each with firearm specifications. Appellant claims the trial court erred when it failed to grant a motion for a mistrial on the basis of impermissible "other acts" testimony and when it failed to deliver a cautionary instruction concerning the calling of a witness as a court's

witness.  Appellant further contends the verdict is against the manifest weight of the evidence.  Finally, appellant argues the crimes of aggravated robbery and kidnapping are allied offenses of similar import which should have merged for the purposes of sentencing.  For the following reasons, the judgment is affirmed.

{¶2}  Appellant was indicted on one count of aggravated robbery, a first-degree felony in violation of R.C. 2911.01(A)(1); one count of kidnapping, a first-degree felony in violation of R.C. 2905.01(A)(2); and one count of theft of drugs, a fourth-degree felony in violation of R.C. 2913.02(A)(4).  Each count contained a firearm specification pursuant to R.C. 2941.145.  The matter proceeded to a jury trial where the following facts were adduced through testimony.

{¶3}  Appellant, a tattoo artist, agreed to give the victim a tattoo.  The victim, who lived with his aunt, arranged for appellant to come to his aunt's private residence to work on the tattoo.  The victim did not have any money for the tattoo, but informed appellant he was anticipating cash gifts for his upcoming birthday.  The pair agreed that the victim would subsequently tender payment once he received the cash gifts.

{¶4}  Thus, on April 18, 2012, appellant and his girlfriend, Angela Prince, went to the residence to initiate the transaction, arriving in Ms. Prince's automobile, a Pontiac G5 sedan.  Upon arrival, appellant explained he did not have his equipment, and the tattoo would need to be given at another location.  The victim was reluctant to leave his home as he was confined to a wheelchair, having previously broken both his legs and ankles after unsuccessfully attempting a back flip on St. Patrick's Day.  Nonetheless, the victim acquiesced and was lifted into the driver-side backseat of Ms. Prince's sedan.  Appellant explained that the automobile did not have enough room for the wheelchair;

2

thus, the wheelchair was not brought into the car, leaving the victim completely incapacitated.

{¶5} Testimony differs at this point. The victim testified that, as the trio started en route to appellant's residence, appellant initiated a conversation concerning the victim's injuries and whether he had been taking any pain medication. The victim confirmed that he had just been to the pharmacy earlier in the day to refill his prescription and had about 80 pain pills on his person. The victim's prescription and his receipt, dated April 18, 2012, were admitted into evidence. The victim testified that he kept these pills in his backpack or on his person on a consistent basis because he did not trust leaving them out at his aunt's house. Appellant asked to examine the pills, and the victim complied. Appellant suggested that the victim immediately tender payment for the tattoo with some of the pain pills. The victim explained this method of payment was unacceptable because he needed the pills for the immense pain in his legs.

{¶6} According to the victim, appellant directed Ms. Prince to turn around and pull over into a nearby abandoned gravel lot. Ms. Prince obeyed, pulled into the lot, and turned off the vehicle according to appellant's instruction. The victim testified that appellant turned around, brandished a firearm, and demanded his cellular phone. After appellant assured the victim that it was not a prank, the victim complied with the demand and turned over his phone. The victim testified that appellant then dragged him from the back of the automobile to the middle of the gravel lot and then left with his pills and cell phone. The victim testified he painfully trudged to a nearby roadway, eventually flagging down two cyclists who dialed 9-1-1. The 9-1-1 tape was played for the jury and admitted into evidence. On the tape, the victim detailed the above-framed narrative and informed the operator that appellant was the perpetrator.

**{¶7}** Appellant took the stand to offer a different version of events. According to appellant, the victim revealed himself to be a drug dealer who was attempting to sell pain pills and, at some point, brandished a box cutter while in the automobile. Appellant explained he was so upset with the victim's audacious behavior that he ejected him from the automobile. Appellant's girlfriend, Ms. Prince, testified in a similar fashion, though was impeached by her prior statements to police and her prior grand jury testimony.

**{¶8}** The jury returned a guilty verdict on all counts. The trial court merged the aggravated robbery and theft of drugs convictions, and sentenced appellant to an aggregate of 10 years in prison: four years for aggravated robbery and four years for kidnapping, to be served concurrently, plus two consecutive three-year terms for the respective gun charges.

**{¶9}** Appellant appeals and raises four assignments of error for review by this court. Appellant's first assignment of error states:

> The trial court erred to the prejudice of the Defendant-Appellant when it failed to give an instruction to the jury after calling one of the state's witnesses as a court's witness, in violation of the Defendant-Appellant's due process rights and rights to fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution.

**{¶10}** In his first assignment of error, appellant argues the trial court erred in failing to issue a cautionary instruction to the jury regarding its calling of a state's witness, Ms. Prince, as a court's witness. The state noted on the record it anticipated Ms. Prince to be a hostile witness, given that she was uncooperative with trial preparation efforts and had continued a relationship with appellant. After some discussion, and with the state's suggestion and defense's consent, the trial court

4

determined it would call the witness as a court's witness. Appellant speculates the jury may have been inclined to believe the trial court was vouching for the witness because it was the trial court who called the witness. Appellant contends the trial court needed to provide guidance by instructing that the testimony of the court's witness should not be given more credibility than the testimony from others.

{¶11} At the outset, we note appellant did not object to Ms. Prince being called as a court's witness but, as noted above, consented to it. Moreover, appellant failed to request any cautionary instruction or object to the omission of such an instruction. Accordingly, he has waived all but plain error on appeal. Crim.R. 52(B) provides: "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Plain error is present only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different." *State v. Turner*, 11th Dist. Ashtabula No. 2010-A-0060, 2011-Ohio-5098, ¶34, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶108. This court will recognize plain error, "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Landrum*, 53 Ohio St.3d 107, 111 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶12} Here, appellant has not demonstrated plain error. First, though called as a court's witness, the trial court did not question Ms. Prince. Rather, the two parties examined the witness pursuant to Evid.R. 614(A). In calling the witness, the trial court simply stated, "[a]t this time Miss Angela Prince is going to be called as a witness in this matter." Thus, appellant's speculation that the jury may have believed the trial court was somehow vouching for the witness is unfounded. Further, it is not possible to

5

determine that the failure to request an instruction was error at all; rather, it could have been trial strategy. Indeed, Ms. Prince's testimony at trial was *favorable* to appellant and is even used later in his merit brief to support his manifest weight argument. Though Ms. Prince's trial testimony was impeached by her prior statements to police and prior grand jury testimony, the jury could have still believed her recent recounting of events, thereby working to appellant's benefit.

{¶13} Appellant's first assignment of error is without merit.

{¶14} Appellant's second assignment of error states:

> The trial court erred to the prejudice of the Defendant-Appellant by overruling his motion for mistrial when a witness testified that he previously had been incarcerated, in violation of the Defendant-Appellant's due process rights and rights to fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution.

{¶15} During the state's examination, Ms. Prince briefly mentioned—without solicitation—that appellant was incarcerated. Appellant then moved for a mistrial, which was denied. Appellant argues the trial court abused its discretion by overruling his motion for a mistrial. Specifically, appellant contends Ms. Prince's mention of appellant's incarceration is inadmissible testimony of "other acts" under Evid.R. 404(B); i.e., the jury was permitted to infer appellant must have committed wrongful acts in the past that led to his incarceration.

{¶16} "'The trial judge is in the best position to determine whether the situation in [the] courtroom warrants the declaration of a mistrial.'" *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶92, quoting *State v. Glover*, 35 Ohio St.3d 18, 19 (1988). Accordingly, a trial court's decision on whether to grant or deny a motion for a mistrial lies within its discretion. *See State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶192.

6

A reviewing court will not second-guess a trial court's decision unless there is an abuse of discretion. *Ahmed* at ¶92. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶61-62, quoting *Black's Law Dictionary* 11 (8th Ed.2004). The Supreme Court of Ohio has cautioned that "[m]istrials are necessary 'only when the ends of justice so require and a fair trial is no longer possible.'" *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, ¶105, quoting *State v. Garner*, 74 Ohio St.3d 49, 59 (1995).

{¶17} As a preliminary matter, we note that evidence of appellant's other crimes ultimately came out when he took the stand in his own defense. In fact, during direct examination, he explained he was in jail prior to this incident. In any respect, Ms. Prince's statement was not permitted by the trial court and was stricken from the record. The trial court immediately instructed the jury to disregard this portion of Ms. Prince's testimony, explaining, "[y]ou are not to consider her response for any reason." Thus, the statement regarding appellant's prior incarceration was not before the jury for its consideration.

{¶18} Appellant acknowledges the trial court gave a cautionary instruction, but argues the instruction was insufficient to remedy the error. However, a trial court's action of instructing a jury to disregard a comment is sufficient to render a purported error harmless because a jury is presumed to follow the instructions of the court. *See State v. Griesmar*, 11th Dist. Lake No. 2009-L-061, 2010-Ohio-824, ¶31-32, and *State v. Adams*, 11th Dist. Ashtabula No. 2012-A-0025, 2013-Ohio-1603, ¶58. As held in *Adams, supra*, which similarly addressed a purported Evid.R. 404(B) violation under a

7

mistrial claim, "[t]here is nothing in the record to indicate that the trial court's instruction was not followed in this matter." *Id.*

**{¶19}** Appellant's second assignment of error is without merit.

**{¶20}** Appellant's third assignment of error states:

**{¶21}** "The trial court erred to the prejudice of the Defendant-Appellant when it returned a verdict of guilty against the manifest weight of the evidence."

**{¶22}** To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In weighing the evidence submitted at a criminal trial, an appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Further, no conviction resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the appeal. *Thompkins* at 386.

**{¶23}** Here, we cannot conclude the jury lost its way in returning a verdict of guilty. The victim's version of events—which supports a conviction under each charge—was corroborated by the 9-1-1 recording, where he excitedly recounted the events that had just transpired, explaining that appellant pointed a gun (either a .25 or .38 caliber) right in his face. Conversely, Ms. Prince, who testified favorably to appellant, was impeached by her prior inconsistent statements to the police and her prior inconsistent grand jury testimony. In fact, Ms. Prince ultimately presented three

8

versions of the same event since the investigation commenced. Appellant's credibility was also affected by the admission of jail-call recordings, authenticated by Detective Brian Butler, between himself and Ms. Prince. The recordings detail the duo attempting to "get the story straight," with appellant explaining that he has "a pretty rock solid story put together now."

{¶24} Despite this evidence, appellant nonetheless exhausts the remainder of his argument contending that his version of events was "more rational" than the victim's account, detailing the numerous ways in which the victim's testimony contradicts appellant's testimony. This court, in *State v. Williams*, 11th Dist. Lake No. 2012-L-078, 2013-Ohio-2040, recently addressed an identical contention. There, the defendant highlighted inconsistent testimony in the record, arguing his version of events was more credible than another witness's account, just as in the case sub judice. We noted that the jury, as the trier of fact, is entitled to believe all, part, or none of a witness's testimony. *Id.* at ¶21. Moreover, "[t]he trier of fact is in the best position to evaluate inconsistencies in testimony by observing the witness's manner and demeanor on the witness stand—attributes impossible to glean through a printed record." *Id.*; *see also State v. Barnes*, 11th Dist. Portage No. 2012-P-0133, 2013-Ohio-2836, ¶49 ("we must defer to the weight and credibility the jury gave to the evidence in this case").

{¶25} Appellant's third assignment of error is without merit.

{¶26} Appellant's fourth and final assignment of error states:

> The trial court erred to the prejudice of the Defendant-Appellant when it failed to merge his convictions [for] aggravated robbery and kidnapping, in violation of his rights against double jeopardy under the Fifth and Fourteenth Amendment[s] to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

9

{¶27} In his fourth assignment of error, appellant alleges the offenses of aggravated robbery and kidnapping were allied and should have merged for the purpose of sentencing.

{¶28} R.C. 2941.25(A) codifies the doctrine of merger, explaining that, "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

{¶29} R.C. 2941.25(B) provides the converse:

> Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶30} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, the Ohio Supreme Court set forth the current standard for determining whether merger is apposite, holding that, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.* at syllabus. In making such a determination, a court must consider whether it is possible to commit the offenses by the same conduct and, if so, whether the offenses were, in fact, committed by the same conduct: i.e., "'a single act committed with a single state of mind.'" *Id.* at ¶49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶50 (Lanzinger, J., concurring in judgment only). If both questions are answered affirmatively, then merger is appropriate. The results of the analysis will vary by case, as the examination of the defendant's conduct is necessarily non-formulaic and inherently subjective. *Id.* at ¶52.

10

{¶31} "An appellate court should apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination." *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶28.

{¶32} The offenses of aggravated robbery and kidnapping are not allied offenses of similar import in this case. The conviction for aggravated robbery was premised upon appellant taking the victim's pain medication, brandishing a firearm, and demanding the victim's cell phone at gunpoint while inside a car. The conviction for kidnapping was premised upon appellant putting the victim in the car, effectively trapping him there, driving him to a remote area, then forcing the victim out of the vehicle and leaving him incapacitated in a gravel pit. The victim had to painfully crawl to the roadway and yell for help. The act of taking the medication and demanding the cell phone from the victim at gun point and the acts related to the kidnapping charge are two separate and distinct acts that were not committed with a single state of mind. We therefore cannot conclude the trial court erred in its sentencing.

{¶33} Appellant's fourth assignment of error is without merit.

{¶34} The judgment of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.