OPINION
{¶ 1} Defendant-appellant Kenneth Henderson appeals from his convictions and sentences in the Stark County Court of Common Pleas on one count of operating a vehicle under the influence of alcohol, a drug of abuse or a combination of them in violation of R.C. 4511.19(A) (1), a felony of the third degree because of appellant's prior OVI conviction and two counts of criminal damaging in violation of R.C. 2909.06, misdemeanors of the second degree. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF FACTS {¶ 2} In the case at bar, Wanda Kirby, the owner of Kirby's Pub, testified that she observed the appellant consume two (2) beers and six (6) to eight (8) shots of Yukon Jack whiskey in a period of no longer than one and one-half hours. (1T. at 120). Ms. Kirby opined that appellant was intoxicated. (Id.). Dustin Kuhn identified the appellant as wearing blue jeans, a sweater and "some flip flop things" while at Kirby's Pub on the night in question. (Id. at 98). Tracy Stephens, the bartender at Kirby's testified that appellant had consumed two beers and two to eight shots of whiskey. (Id. at 137). She indicated that appellant was intoxicated. (Id. at 138). Ms. Stephens observed appellant consume four shots each in one "gulp" immediately after she had poured them. (Id. at 159).
 {¶ 3} After midnight, appellant became disruptive and wanted to fight other patrons. (Id. at 96, 98, 114-115, 140, 142). Ms. Kirby was successful in calming appellant down for a short time, during which appellant consumed a beer and a shot. (Id. at 119; 143). Ms. Kirby walked appellant to the back door and attempted to take away his glass of beer which appellant jerked away from her. (Id. at 121; 143). Several patrons helped to eject appellant from the bar. (Id. at 98; 121; 143-44). Ms. Kirby then bared the door to prevent appellant from returning. (Id. at 115; 122) Appellant had kicked off his flip-flops and had taken off his shirt. (Id. at 122; 144).
 {¶ 4} Appellant returned and began pounding on the door of the bar asking about his keys. (Id. at 96; 122; 144; 166).
 {¶ 5} Megan Stephens, the thirteen year old daughter of Tracy, testified that she and her mother's home is located just behind Kirby's Pub. (Id at 162-64). On the night in question, she heard yelling so she shut off her light and looked out of her bedroom window. (Id. at 160-61; 166, 167). She observed three people and a fourth individual come out of the bar. (Id. at 166). Three people went back inside, but one man did not. (Id.). She observed the man rip off his shirt and yell for his keys. (Id. at 167). She observed the headlights of a truck come on and the man appear to be looking on the ground for something. (Id. at 167-68). She then observed the man pick up a rock and throw it through the window of a green car. (Id.). The individual then proceeded to get into the white truck. (Id. at 171). Although she did not see the truck crash into the black car, Megan testified that she heard the crash. (Id. at 172). Megan was not able to identify appellant as the person she had seen on the night in question.
 {¶ 6} Eric Nowacynski testified that he walked to Kirby's Pub sometime around 1:00 a.m. (Id. at 226). He testified that he was intoxicated. (Id. at 227). Mr. Nowacynski heard an engine "revving up, peeling out". (Id.). He witnessed a white Cherokee, a newer one, back into a telephone pole. (Id.). As the vehicle attempted to leave the driveway, he observed the Cherokee slam into a green car, back up and slam into the green car a second time. (Id.). He went inside the bar and told the patrons what he had witnessed outside. (Id. at 230).
 {¶ 7} The bar patrons went outside and observed Michelle Daily's Pontiac Grand Am had the passenger side window smashed out. (Id. at 185). Dustin Kuhn's black and grey car was damaged and rammed off the roadway. (Id. at 99-100; 116, 146). The damage to Mr. Kuhn's vehicle was estimated to be $2,119.08. (Id. at 104).
 {¶ 8} Megan Greathouse, appellant's nineteen year old cousin, testified that on the evening in question appellant showed up, intoxicated at her home around 1:00 a.m. (Id. at 194; 202; 210). Appellant's hand was bleeding. (Id). Appellant told his cousin that he had "laid someone out" at the bar and that he had smashed a car window. (Id. at 204-05). Appellant told Ms. Greathouse that he was going to roll his jeep in the mud bog on her property because "he wasn't going to have it much longer". (Id. at 202) Appellant explained that he needed to roll the vehicle before he went to jail. (Id. at 207). She testified that she saw the jeep drive by her house. (Id. at 206). Although she had told the State prior to trial that she had actually seen appellant drive the jeep, Ms. Greathouse equivocated at trial claiming she did not actually see the appellant drive the jeep. (Id. at 206-7; 216). Ms. Greathouse further testified that appellant called her around 2:15 a.m to tell her that he was stuck in the mud. (Id. at 207, 217). She and her parents then began a search for the appellant. (Id. at 209).
 {¶ 9} At approximately 2:20 a.m. the Stark County Sheriff's Department was called out to the Greathouse property for a suspicious vehicle. Deputy Eddy located a white jeep Cherokee stuck in the mud. (Id. at 218-223). The vehicle's engine was still warm. (Id.). Because it was a cold night and they had been informed that the driver did not have shoes on, the deputies continued to search for the driver of the vehicle until 3:37 a.m. (Id.).
 {¶ 10} The East Canton Police Department conducted the follow-up investigation. The jeep was impounded and photographs of damage to the front area of the vehicle were taken. (Id. at 237-241). The damaged area of the jeep revealed black paint marks. (Id. at 256). Inside the jeep the police located a bill of sale which named appellant as the owner of the vehicle. (Id. at 243).
 {¶ 11} The police department compiled a photo-lineup. Witnesses at the bar pointed out appellant's picture as being the person who had caused problems at the bar on the night in question, and had been ejected from the bar immediately before the vehicles in the parking lot had been damaged. (Id. at 258-59; 103-4; 124, 148).
 {¶ 12} At trial, the State introduced evidence of appellant's prior felony DUI conviction and evidence that appellant was awaiting sentencing on that case when the instant offense was committed. (Id. at 85-88; 90-93).
 {¶ 13} Prior to the commencement of trial, the parties agreed that the OVI charge would be tried to a jury, but the misdemeanors would be tried to the court.
 {¶ 14} The jury trial concluded with a verdict of guilty of operating a vehicle under the influence of alcohol, a drug of abuse or a combination of them in violation of R.C. 4511.19(A)(1), a felony of the third degree because of appellant's prior OVI conviction. The trial court found appellant guilty on two counts of criminal damaging in violation of R.C. 2909.06, misdemeanors of the second degree.
 {¶ 15} The trial court sentenced appellant to serve three (3) years in a state penal institutional for the OVI charge and 60 days each on the misdemeanor counts, concurrent to the felony charge. Appellant was fined $1,000.00, ordered to pay $500.00 in restitution to each victim, assessed 6 points to his driver's license, and received a 10 year driver's license suspension. The trial court ordered that the sentence in this case run consecutive to the sentence imposed in the appellant's prior felony OVI case.
 {¶ 16} Appellant timely appealed and raises the following Three Assignments of Error for our consideration:
 {¶ 17} "I. The trial court erred and thereby deprived the appellant, kenneth henderson, of due process of law as guaranteed by thefourteenth amendment of the united states constitution and article one, section ten of the ohio constitution, as the prosecution failed to offer sufficient evidence to prove beyond a reasonable doubt that mr. henderson was driving under the influence.
 {¶ 18} "II. The trial court erred and thereby deprived the appellant, mr. kenneth henderson, of due process of law as guaranteed by thefourteenth amendment of the united states constitution and article one, section ten of the ohio constitution by finding mr. bell guilty, as the verdict for the charges of driving under the influence and criminal damaging were against the manifest weight of the evidence.
 {¶ 19} "III. The trial court committed prejudicial error in imposing a sentence to be served consecutively with one mr. henderson is currently serving."
 I. II. {¶ 20} In his First Assignment of Error, appellant maintains the verdict was against the sufficiency of the evidence. In his Second Assignment of Error, appellant argues that his conviction is against the manifest weight of the evidence. We disagree.
 {¶ 21} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt,State v. Jenks (1991), 61 Ohio St. 3d 259.
 {¶ 22} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 23} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins (1997), 78 Ohio St. 3d 387, citations deleted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment."
 {¶ 24} State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 25} In State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id., paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., paragraph four of the syllabus; State v. Miller (2002),96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.
 {¶ 26} It is permissible for a jury to draw several conclusions or presumptions of fact from the same set of facts and equally permissible for a jury to use a series of facts or circumstances as a basis for ultimate findings or inferences. Hurt v. Charles J. Rogers TransportationCo. (1955), 164 Ohio St. 329. An inference which is based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged by a jury. State v. Saunders (1984),23 Ohio App.3d 69. The trier of fact may draw permissible inferences from the evidence. State v. Seiber (1990), 56 Ohio St.3d 4, 15.
 {¶ 27} It is, however, well-settled under Ohio law that a defendant may be convicted solely on the basis of circumstantial evidence. Statev. Kulig (1974), 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897; Statev. Hankerson (1982), 70 Ohio St.2d 87, 24 O.O.3d 155, 434 N.E.2d 1362, certiorari denied (1982), 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130;State v. Kamel (1984), 12 Ohio St.3d 306, 12 OBR 378, 466 N.E.2d 860. "* * * [P]roof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less value than the others. 1A Wigmore, Evidence (Tillers Rev. 1983) 944, Section 24 et seq." State v.Griffin (1979), 13 Ohio App.3d 376, 377, 13 OBR 458, 460,469 N.E.2d 1329, 1331. "Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable."United States v. Andrino (C.A.9, 1974), 501 F.2d 1373, 1378.
 {¶ 28} To find appellant guilty of Driving Under the Influence as charged in the indictment, the jury would have to find appellant operated any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply: (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.
 {¶ 29} To find appellant guilty of the crime of Criminal Damaging as charged in the indictment, the trial court, as the trier of fact, would have to find that appellant knowingly caused, or created a substantial risk of physical harm to any property of another without the other person's consent.
 {¶ 30} In the case sub judice, the State presented ample evidence that appellant was the driver of the white jeep Cherokee. The evidence showed that appellant's vehicle caused the damage to Mr. Kuhn's vehicle. It is undisputed that appellant had been ejected from the bar. It is further unrefuted that appellant was intoxicated when he was escorted to the parking lot. It is further unrefuted that the appellant was asking about his keys immediately prior to the cars being damaged. The evidence included the testimony of Eric Nowacynski that a white jeep caused the damage. The evidence further revealed that a person, who had been escorted out of the bar, picked up a rock and smashed the passenger side window of Ms. Dailey's vehicle. A white jeep Cherokee appeared at the home of Ms. Greathouse at the same time appellant arrives unannounced and the vehicle is subsequently found in a mud bog on her property. The bill of sale found inside the vehicle lists appellant as the owner of the vehicle. As previously noted, this evidence gave rise to a permissible inference that appellant was driving his car at the time of the incident. The jury, and the trial court, as the finders of fact, chose to credit the testimony of the State's witnesses and to draw the inference. These were decisions for the finders of fact to make.
 {¶ 31} In State v. Barrett (Feb. 26, 2001), Licking app. No. 00CA 47, this Court held that observation of impaired driving is not necessarily a prerequisite to a conviction for DUI. See State v. Whitaker (Aug. 9, 2000), Licking App. No. 99CA140, unreported (citing State v. Lewis
(1999), 131 Ohio App.3d 229, 722 N.E.2d 147). In Barrett, we stated:
 {¶ 32} "R.C. 4511.19(A) (1) requires evidence that the driver is `is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse'. In Toledo v. Starks (1971), 25 Ohio App.2d 162, 267 N.E.2d 824, the court defined the term `under the influence' as follows: `. . . the condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle.' Id. at 166, 267 N.E.2d 824." See, also, State v. Rolf, 5th Dist. No. 02-CA-00116, 2003-Ohio-2513 at ¶ 11-12.
 {¶ 33} As we previously noted, there is no dispute that appellant was intoxicated. Further, the evidence produced at trial supports the inference that appellant's consumption of alcohol on the night in question adversely affected his actions, reactions, conduct, movement or mental processes or impaired his reactions to an appreciable degree, thereby lessening his ability to operate his white jeep Cherokee on the night in question.
 {¶ 34} This Court must afford the decision of the trier of fact concerning credibility issues the appropriate deference. We will not substitute our judgment for that of the trier of fact on the issue of witness credibility unless it is patently clear that the fact finder lost its way. State v. Parks, 3rd Dist. No. 15-03-16, 2004-Ohio-4023, at ¶ 13, citing State v. Twitty, 2nd Dist. No. 18749, 2002-Ohio-5595, at ¶ 114.
 {¶ 35} Looking at all of the evidence before us, we can not say that the jury, or the trial court, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The jury was in the best position to hear the testimony, observe the witnesses, and determine their reliability. Accordingly, we hold that the jury's finding that appellant was the driver of the white jeep Cherokee, and that appellant was "under the influence" was not against the manifest weight of the evidence.
 {¶ 36} Appellant's First and Second Assignments of Error are overruled.
 III. {¶ 37} In his third assignment of error, appellant alleges that the trial court erred when it sentenced appellant to serve the sentence in the case at bar consecutive to a sentence imposed in his prior OVI case. Appellant was awaiting sentence on that case at the time he was convicted in the case at bar. Appellant contends that the trial court failed to make all of the findings to impose consecutive sentences and that the findings made by the trial court were not supported by the record.
 {¶ 38} The statutory scheme assumes that sentences imposed in separate cases will be concurrent unless the court determines consecutive sentences should be imposed under R.C. 2929. 14 (E). State v. Givens,
Franklin App. No. 80319, 2002-Ohio-4904. R.C. 5145.01 provides that "[i]f a prisoner is sentenced for two or more separate felonies, the prisoner's term of imprisonment shall run as a concurrent sentence, except if the consecutive sentence provisions of Sections 2929.14 and 2929.41 of the Revised Code apply."
 {¶ 39} In order to impose consecutive sentences, a trial court must comply with R.C. 2929.14(E) (4) and R.C. 2929.19(B) (2) (c). R.C.2929.14(E)(4) states as follows: "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 40} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to Section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 41} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 42} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 43} R.C. 2929.14(E)(4) requires the court to make three findings in order to sentence an offender to consecutive sentences: (1) consecutive sentences are "necessary to protect the public from future crime or to punish the offender, * * * [(2)] consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, * * * [and (3)] [t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 44} "Consecutive sentences are reserved for the worst offenses and offenders." Comer, 99 Ohio St.3d 463, at ¶ 21 (citation omitted). Thus, in imposing consecutive sentences, the trial court must support its decision with specific findings as to all three requirements of R.C.2929.14(E) (4). Id.
 {¶ 45} At the outset we note that the trial court had before it at the time of sentencing in the case at bar, a pre-sentence investigation report. (2T. at 345). We also note that we do not know the specific contents of the pre-sentence investigation report as appellant did not make them a part of the record. In State v. Untied (Mar. 5, 1998), Muskingum App. No. CT97-0018, we addressed the issue of failure to include the presentence investigation report and stated:
 {¶ 46} "Appellate review contemplates that the entire record be presented. App.R. 9. When portions of the transcript necessary to resolve issues are not part of the record, we must presume regularity in the trial court proceedings and affirm. Knapp v. Edwards Laboratories
(1980), 61 Ohio St. 2d 197, 400 N.E.2d 384. The pre-sentence investigation report could have been submitted "under seal" for our review.
 {¶ 47} "Without the cited information and given the trial court (sic) findings on the record, we cannot say appellant's sentence was against the manifest weight of the evidence or `contrary to law." Id. at 7.
 {¶ 48} We reach the same conclusion, in the case sub judice, because appellant failed to include in the record the pre-sentence investigation report. State v. Wallace (March 29, 2004), 5th Dist. No. 03-CA-A-07-043;State v. Mills (Sept. 25, 2003), 5th Dist. No. 03-COA-001.
 {¶ 49} The trial court specifically found that each requirement of R.C. 2929.14(E) (4) was present. In support of its findings, the trial court stated at the sentencing hearing that its decision was based on appellant's criminal past and lack of rehabilitation, and the numerous DUI's, assaults and aggravated menacing charges in appellant's history. (2T. at 347-38; 350; 352). The trial court noted that appellant committed this offense while awaiting sentencing on a previous felony OVI case. (Id. at 348; 357). This case occurred on March 21, 2004; appellant had pleaded guilty to the prior felony OVI on March 8, 2004 and sentencing in that case was scheduled for April 8, 2004. The court found that this was appellant's second felony DUI within three months, and his conduct in this case included damaging two vehicles and leaving his vehicle stranded in the mud. (Id. at 357). The court specifically found that appellant's prior record demonstrates consecutive sentences are necessary to protect the public from future crimes. (Id.). In the sentencing hearing, the trial court reminded the appellant that the court had previously referred appellant to SRCC, but that he was unable to conduct himself appropriately in the one month period of time between his plea and sentencing in the previous case. (Id. at 348). The court reminded appellant that he had been warned by the court that any traffic violations or consumption of drugs or alcohol would jeopardize appellant's chances of community control sanctions. (Id.). The trial judge further noted that appellant had a chance to acknowledge any addiction problem and receive help, but failed to take advantage of the opportunity. (Id. at 353). The court found that consecutive sentences were not disproportionate to the seriousness of appellant's conduct and to the danger the offender poses to the public. (Id. at 356-357).
 {¶ 50} Thus, we find that the trial court provided sufficient findings as to all three elements required to impose consecutive sentences.
 {¶ 51} Appellant's third assignment of error is overruled.
 {¶ 52} For the foregoing reasons, the judgment of the Court of Common Pleas, of Stark County, Ohio, is affirmed.
By Gwin, P.J., Hoffman, J., and Edwards, J., concurs.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, of Stark County, Ohio, is affirmed.